M. Greg Mullanax, SBN 155138
greg@lawmgm.com
Law Office of M. Greg Mullanax
2140 N. Winery Avenue, Suite 101
Fresno, CA 93703
(559) 420-1222
(559) 354-0997 fax

Attorney for Plaintiffs,
Ric Schiff, *et al.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

| | |
|---|---|
| Frederick (Ric) Schiff; Glenn Brakel; Alice Dicroce; Joseph Emanuel; Brian Greer; Clayton Harmston; Steven Haskell; Micah Hope; Daniel Kelly; Alexander Lentz; Brandon McKelley; Gerald Newbeck; David O'Keeffe; Christopher Ritter; Steven Uang and Thomas Walsh,<br><br>Plaintiff,<br><br>v.<br><br>City and County of San Francisco; Greg Suhr, individually; William (Bill) Scott, individually; and DOES 1-20,<br><br>Defendants. | Case No. 4:19-cv-03260-YGR<br><br>**Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment**<br><br>Hearing Date:   July 26, 2022<br>Time:<br>           2:00 p.m.<br>Place:<br>Courtroom 1, 4th Floor<br>Judge:           Hon. Yvonne Gonzalez Rogers<br><br>Date Action Filed: June 11, 2019<br>Date FAC Filed:    June 26, 2019<br>Date TAC Filed:    April 28, 2020<br>Trial Date:            TBD |

Table of Contents

A. Introduction ........................................................................................................................ 4

B. Factual Background ........................................................................................................... 4

    Chief Scott Tells SFPOA He Uses Race and Gender in Making Promotional Decisions ...... 5

    Sergeant Promotional Rounds ............................................................................................ 5

    Lieutenant Promotional Rounds ......................................................................................... 6

    Captain Promotional Rounds ............................................................................................. 7

C. Legal Argument .................................................................................................................. 7

  Legal Standard – Summary Judgment .................................................................................. 7

    Direct Evidence of Race and Gender Discrimination ........................................................ 9

    Chief Scott's Admission Is Not A Stray Remark .............................................................. 10

    The Promotional Lists Corroborate Chief Scott's Statement ............................................ 10

D. Conclusion ........................................................................................................................ 11

# TABLE OF AUTHORITIES

**US SUPREME COURT CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .......................................................................................... 8

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .......................................................................................... 8

**FEDERAL CASES**

*Albino v. Baca ("Albino*,
    747 F.3d 1162 (9th Cir. 2014) ......................................................................... 8

*Aragon v. Republic Silver State Disposal, Inc.*,
    292 F.3d 662 (9th Cir. 2002) ........................................................................... 9

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
    657 F.3d 936 (9th Cir. 2011) ........................................................................... 9

*Lam v. Univ. of Hawaii*,
    40 F.3d 1551 (9th Cir. 1994) ........................................................................... 9

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*,
    210 F.3d 1099 (9th Cir. 2000) ......................................................................... 8

*Soremekun v. Thrifty Payless, Inc.*,
    509 F.3d 978 (9th Cir. 2007) ........................................................................... 9

*Taylor v. List*,
    880 F.2d 1040 (9th Cir. 1989) ......................................................................... 8

**FEDERAL RULES**

Federal Rules of Civil Procedure
    Rule 56 .......................................................................................................... 8, 8

### A. Introduction

1. This is a lawsuit about the improper use of race and gender in making promotional decisions at the San Francisco Police Department ("SFPD"). This case concerns promotions to Sergeant, Lieutenant, and Captain for the years 2017, 2018 and 2019. In January 2017, defendant William Scott was sworn in as the new SFPD Chief. In his first round of promotions in October and November 2017, Chief Scott promoted many lower scoring candidates on the ranked eligibility lists over higher scoring candidates that were overwhelming male and white.

2. In November 2017, Chief Scott addressed the general membership meeting of the San Francisco Police Officers Association ("SFPOA") and after being asked about the promotional process, announced that he *did* use race and gender in making promotional decisions. This statement, which he currently denies, is corroborated by a review of the promotional lists and promotional announcements and also by dozens of witnesses.

3. There is a genuine dispute of fact because many witnesses heard Chief Scott make the statement, which is direct evidence of discrimination, and since Chief Scott denies it, a jury should decide the issue. Additionally, there is corroboration of Chief Scott's statement with the promotion lists.

### B. Factual Background

4. Defendant William Scott was sworn in as Chief of the San Francisco Police Department in January 2017 after a long and successful career with the Los Angeles Police Department. (Mullanax Decl., Ex. O, p. 2-4.).

5. In September and October 2017, Chief Scott made his first promotional decisions for candidates seeking to promote to Sergeant, Lieutenant, and Captain. (Cownan Decl., Ex. 4 & 7). When the promotional announcements were made, they caused quite a stir among the members of the SFPD because the promotions were not made in rank order on the eligible lists, or even close to rank order in many cases, but were made from all over the list. (Mullanax Decl., Ex. J, p. 4, Ex. L, p. 5-7). This jumping around the list mainly benefitted lower scoring African Americans and females. (Mullanax Decl., Ex. A, Ex. B, Ex. C).

**Chief Scott Tells SFPOA He Uses Race and Gender in Making Promotional Decisions**

6.  The SFPOA and its membership were very upset. (Mullanax Decl., Ex. J, p. 2-3; Ex. G, p. 3). In an appearance before the San Francisco Police Officers Association in November 2017, Chief Scott told the membership that he did use race and gender in making promotional decisions. (Mullanax Decl., Ex. E, p. 4; Ex. G, p. 3-5; Ex. J, p. 4-5; Ex. N, p. 8). SFPOA secretary Rick Adreotti documented Chief Scott's declaration that he used race and gender in making promotional decisions in the December 2017 issue of the San Francisco Police Officers Association Journal and the minutes were approved by the SFPOA Board. (Mullanax Decl., Ex. E, p. 3-4).

7.  After hearing Chief Scott's comments about using race and gender in making promotions, many of the members were shocked, amazed, and surprised. (Mullanax Decl., Ex. E, p. 4; Ex. G, p.4; Ex. N, p. 9-10).

8.  Close scrutiny of the promotion lists confirms Chief Scott's declaration that he used race and gender in making promotional decisions—or at least rises to the level of a disputed material fact—that race and gender were used in making promotional decisions because almost all African Americans and females were promoted over higher scoring white and Asian male candidates. (Mullanax Decl., Ex A, Ex. B, Ex.C).

**Sergeant Promotional Rounds**

9.  For example, in the 2017 Sergeant promotional round, promotions were made from Rank 1 -Rank 80. There were 76 total candidates promoted. (Cownan Decl., Ex. 4). There was a total of 140 candidates in Rank 1 – Rank 80. Every African American in that range was promoted. Twenty-one females in that range were promoted while only two were not promoted. Meanwhile, sixty-three males in that range were not promoted. Of those, forty-nine were white males. The lowest ten ranks that were promoted included five Asian females, three African American males, one Filipino male and only one white male. (Mullanax Decl., Ex. A).

10. The 2018 Sergeant promotional round, promotions were made from Rank 20 – Rank 90. A total of 45 candidates were promoted. (Cownan Decl., Ex. 7). There were total of 78 candidates in Rank 20- Rank 90. (One black male candidate at Rank 84 was not eligible for

promotion.) (Mullanax Decl., Ex. A). Those that were skipped included 25 white males, three Filipino males, one Asian male, and four Hispanic males. Five females were promoted, meaning that all females in the Rank 1 – Rank 90 range covering the first two rounds of promotions were promoted. All three remaining eligible African American candidates in that range were all promoted. (Mullanax Decl., Ex. A).

11. Plaintiffs filed this lawsuit on June 11, 2019. (ECF No. 1). The next Sergeant promotional round was announced on October 28, 2019. (Cownan Decl., Ex. 11). Sixty-six candidates were promoted this round, including plaintiffs McKelley (Rank 33), Lentz (Rank 37), Emanuel (Rank 48), Kelly (Rank 56), Uang (Rank 56), O'Keeffe (Rank 57), and Brakel (Rank 60). (Mullanax Decl., Ex. A). This round of promotions was noted for promotions closer to rank order, except toward the bottom of the list. The promotions were made from Rank 17 – Rank 138. Of those not promoted in this round, fifty-nine were males. Only one eligible African American male was not promoted. Twenty-eight white males were not promoted (one at Rank 63 pulled out). Seven Asian males were not promoted. Nine Filipino males were not promoted. Fifteen Hispanic males were not promoted. (Mullanax Decl., Ex. A).

12. In the three Sergeant promotional rounds, only five females were not promoted and only one eligible African American was not promoted. (Mullanax Decl., Ex. A).

**Lieutenant Promotional Rounds**

13. In the 2017 Lieutenant promotional round, promotions were made from Rank 1- Rank 39. (Mullanax Decl., Ex. B). There were a total number of fifty-one candidates eligible for promotion in Rank 1- Rank 39, except for Rank 34, who was no eligible for promotion. Thirty candidates were promoted to Lieutenant. (Cownan Decl., Ex. 27).  Plaintiffs Greer (Rank 17), Walsh (Rank 18), Harmston (Rank 19) were all passed over. All eligible African Americans in the range were promoted, except for one African American female. Nine females were promoted and three were not promoted. Eighteen males were not promoted, and fourteen were white.

14. In the 2018 Lieutenant promotional round, promotions were made from Rank 12 – Rank 44. There were twenty-six candidates eligible for promotion in these ranks. (One candidate retired (Rank 21) and one candidate was not eligible for promotion (Rank 34)). The remaining

females in Ranks 1-44 were all promoted, as well as all African Americans.

15. In the 2019 Lieutenant promotional round, promotions were made from Rank 17 – Rank 62. Twenty-one candidates were promoted. (Cownan Decl., Ex. 33). Plaintiffs Greer (Rank 17), Walsh (Rank 18), and Harmston (Rank 19) were finally promoted. Plaintiff Haskell (Rank 41) was not promoted, even though Chief Scott went down the list to promote at Rank 63. There were 33 candidates between Haskell and Rank 63. (Mullanax Decl., Ex. B).

16. In the three Lieutenant promotional rounds, only three eligible females (two white and one Hispanic) were not promoted. Almost all eligible African American candidates were promoted. Twenty males were not promoted. Of those, thirteen were white, two were Hispanic, four were Asian and one was African American.

**Captain Promotional Rounds**

17. In the 2017 Captain promotional round, promotions were made from Rank 9 – Rank 25. Nine candidates were promoted to Captain. (Cownan Decl., Ex. 27). Plaintiff Schiff (Rank 12) was waiting for promotion this round. There were eighteen eligible candidates in these ranks. Schiff was passed over. Those lower scoring promoted candidates consisted of one Asian male (Rank 13), two African American females (Ranks 20 & 25), and one white female (Rank 19). (Mullanax Decl., Ex. C).

18. In the 2018 Captain promotional round, promotions were made from Rank 14 – Rank 36. Six candidates were promoted to Captain. (Cownan Decl., Ex. 30). Plaintiff Schiff was still waiting to get promoted. There were nineteen eligible candidates in these ranks. Schiff was passed over again. The lower scoring candidates who were promoted included an African American male (Rank 14), a white female (Rank 15), an Hispanic male (Rank 16), a white female (Rank 30), a white male (Rank 31) and an Asian male (Rank 36). (Mullanax Decl., Ex. C).

19. In the 2019 Captain promotional round, Schiff was finally promoted, after the lawsuit was filed. (Cownan Decl., Ex. 33).

### C. Legal Argument

**Legal Standard – Summary Judgment**

20. Summary judgment in favor of a party is appropriate when there "is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca* ("*Albino II*"), 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

21. A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex* at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

22. On summary judgment, the existence of a discriminatory motive for the

employment decision will generally be the principal question. To survive the employer's summary judgment motion, only a genuine factual issue with regard to discriminatory intent need be shown, a requirement that is almost always when the plaintiff's evidence, direct or circumstantial, consists of more than the *McDonnell Douglas* presumption. *Lam v. Univ. of Hawaii*, 40 F.3d 1551, 1559 (9th Cir. 1994).

23. In judging the evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted). The court must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

**Direct Evidence of Race and Gender Discrimination**

24. Direct evidence is evidence which, if believed, proves the fact of discrimination without inference or presumption. *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 662 (9th Cir. 2002). (citations omitted). If a plaintiff presents direct evidence of discriminatory motive, a triable issue as to actual motivation of the employer is created even if the evidence is not substantial. *Id*.at n. 5 (citation and quotes omitted).

25. Here we have several witnesses who heard Chief Scott tell the SFPOA membership that he used race and gender in making promotional decisions. Chief Scott now denies this, but several witnesses have testified under oath they heard Chief Scott make the statement, and it was documented in the December 2017 issue of the SFPOA Journal. Not only that, but Chief Scott has not provided any statements from percipient witnesses to declare that was not what Chief Scott said.

26. Additionally, just days before the SFPOA meeting, promotions were announced and it created a buzz in the SFPD because of the jumping around on the promotional lists, apparently to the benefit of African American and female candidates, at the expense of higher scoring males, especially white males. The SFPOA membership was anxious to hear Chief Scott's explanation explaining the promotions and when he said he did use race and gender in promotional decisions, that statement confirmed what everyone had suspected.

27.     If a jury believes that Chief Scott made the statement that he used race and gender in making promotional decisions, then plaintiffs will win the case. On the other hand, if the jury believes Chief Scott, plaintiffs will lose the case. Chief Scott's statement goes to the very heart of the case and there is probably no better example of a genuine dispute of material fact that should preclude summary judgment and probably no better evidence of what constitutes direct evidence.

**Chief Scott's Admission Is Not A Stray Remark**

28.     Defendants claim that Chief Scott's declaration that he used race and gender in making promotional decisions is a "generically made stray remark." I do not think the officers that were passed over for promotions thought Chief Scott's explanation was a "generically made stray remark." Chief Scott announced that he intentionally used race and gender in the promotions. That affected directly all plaintiffs because most of them missed out on promotions for two rounds even though they ranked very high on list. And there is evidence that Chief Scott knew the race and gender of the *candidates because he said he used race and gender in making his promotional decisions*. Chief Scott's declaration was very particular and directly related to the decision-making process.

**The Promotional Lists Corroborate Chief Scott's Statement**

29.     As discussed above, one can look at plaintiff Exhibits A, B and C and quickly see that Chief Scott used the Rule of 10 to its maximum advantage to accomplish his goals of using race and gender during the promotional process. Defendants contend that plaintiffs argue that the Rule of 10 by itself constitutes discrimination. But that is not plaintiffs' position. Using the Rule of 10 without considering race or gender in making promotional decisions would probably pass muster under the scrutinizing eyes of a court, especially if the decision-maker never admitted to using race and gender in making promotional decisions. If one uses a rank order system based on tests that are created by the City and in conjunction with private contractors who are paid over a million dollars to create tests that are not implicitly biased and try to test the skills as accurately as possible for each position, there is no room for intentional race or gender discrimination.

30.     But the Rule of Ten can be abused, easily so, by one who wants to use race and gender in making promotional decisions from the list of eligible candidates. This is what plaintiffs contend Chief Scott did. And plaintiffs contend Chief Scott admitted it.

31.     Regarding the testing process, defendants argue that the civil service promotional examinations do not enough information to determine success at a certain position. On January 3, 2018, Chief Scott issued a memo entitles "The Sworn Promotional Process" in which he discusses the promotional examinations. (Mullanax Decl., Ex. O-1 [Scott depo Ex. 3]). In the memo, Chief Scott writes, "The exam is meant to simulate the job as much as possible. The more of the job you test, the more you can accurately predict future success." Chief Scott goes on to discuss working with subject matter experts using DHR's Public Safety Team to conduct detailed job analysis to be used in the development of tests that will accurately predict success.

32.     Chief Scott testified in his deposition that he thought the testing process for the promotional rounds were fair and that the scoring of the exams did not have an adverse impact on certain racial groups or genders. Chief Scott further testified that he thought the testing procedures for the promotional rounds in question were fair. (Mullanax Decl., Ex.O, p.19-20).

33.     Much is made of the secondary criteria that Chief Scott considers in the promotional process. Defendants argue that plaintiffs contend secondary criteria is useless. But that is not the case at all. Plaintiffs contend that secondary criteria was not used properly in these promotional rounds, if it was used at all. When asked in his deposition about why he promoted certain lower scoring candidates over others, Chief Scott's reply was that the candidate was eligible and he can promote any eligible candidate he so chooses. He said he look at the promotion matrix that showed had the boxes checked based on submitted secondary criteria, but he would not explain why he picked certain lower scoring candidates over other candidates who scored much higher on the tests and who had similar secondary criteria. (Mullanax Decl., Exhibit O, p. 21-23).

### D.     CONCLUSION

34.     Plaintiffs respectfully ask the Court to deny defendants' motion for summary judgment, or in the alternative, partial summary judgment because there is a genuine dispute over a material fact which is Chief Scott's statement to the SFPOA membership that he used race and gender when making promotional decisions. This remark goes to the very heart of this case. Additionally, the promotion lists show strong evidence that Chief Scott did race and gender when making his promotional decisions.

35.     This case is appropriate for trial and the factual disputes should be decided by a jury.

Dated:   June 17, 2022                    LAW OFFICE OF M. GREG MULLANAX


                                          By:   /s/ M. Greg Mullanax
                                                M. Greg Mullanax
                                                Attorney for Plaintiffs,
                                                Ric Schiff, *et al.*