# EXHIBIT F

Page 1

```
 1            UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3
 4   FREDERICK (RIC) SCHIFF; GLENN
     BRAKEL; ALICE DICROCE; JOSEPH
 5   EMANUEL; BRIAN GREER; CLAYTON
     HARMSTON; STEVEN HASKELL; MICAH
 6   HOPE; DANIEL KELLY; ALEXANDER
     LENTZ; BRANDON McKELLEY; GERALD
 7   NEWBECK; DAVID O'KEEFFE;
     CHRISTOPHER RITTER; STEVEN UANG;
 8   and THOMAS WALSH,
 9            Plaintiffs,
10       vs.                   No. 4:19-CV-03260-YGR
11   CITY AND COUNTY OF SAN FRANCISCO;
     GREG SUHR, individually; WILLIAM
12   (BILL) SCOTT, individually; and
     DOES 1-20,
13
              Defendants.
14   _____
15
16
17        CONFIDENTIAL DEPOSITION OF
18            Chief Toney Chaplin
19
20            November 29, 2021
21               2:01 p.m.
22
23    Remote Videoconference Deposition Via Zoom
24
25        Donna Archuleta, CSR No. 11828
```

Page 2

```
 1            APPEARANCES OF COUNSEL
 2
 3   On behalf of the Plaintiffs:
 4       M. GREG MULLANAX, ESQ.
         LAW OFFICE OF M. GREG MULLANAX
 5       2140 North Winery Avenue, Suite 101
         Fresno, California 93703
 6       559.420.1222
         greg@lawmgm.com
 7
 8   On behalf of the Defendants:
 9       PETER A. COWNAN, ESQ.
         OFFICE OF THE CITY ATTORNEY OF SAN FRANCISCO
10       1390 Market Street, Fifth Floor
         San Francisco, California 94102
11       415.554.3863
         peter.cownan@sfcityatty.org
12
13   Also Present:
14       FREDERICK SCHIFF, Plaintiff
15
```

Page 3

```
 1              INDEX OF EXAMINATION
 2   WITNESS:  CHIEF TONEY CHAPLIN
 3   EXAMINATION                              PAGE
 4   By Mr. Mullanax                             4
 5
 6
 7    (All exhibits marked at conclusion of deposition.)
 8              INDEX TO EXHIBITS
 9   PLAINTIFFS'         DESCRIPTION      REFERENCE PAGE
10   Exhibit 1    Document entitled, "Q-50 Secondary
                  Criteria Recommendations," undated    10
11
     Exhibit 2    Document entitled, "Q-60 Secondary
12                Criteria Recommendations," undated    15
13   Exhibit 3    Document entitled, "Q-80 Captains
                  Secondary Criteria Recommendations,"
14                undated                               18
15   Exhibit 4    Document entitled, "Q-50 Sergeants
                  Secondary Criteria Recommendations,"
16                undated                               20
17   Exhibit 5    Document entitled, "Q-60 Lieutenants
                  Secondary Criteria Recommendations,"
18                undated                               21
19   Exhibit 6    Document entitled, "Q-80 Captains
                  Secondary Criteria Recommendations,"
20                undated                               22
21
22   DEFENDANTS'         DESCRIPTION      REFERENCE PAGE
23              NO EXHIBITS MARKED
24
25
```

Page 4

```
 1       MR. COWNAN:  At the start of deposition today,
 2   I'm going to confirm two agreements that the parties
 3   have.
 4       The first is this deposition transcript and the
 5   deposition in its entirety will be marked as confidential
 6   pursuant to the parties' stipulated and executed
 7   protective order.
 8       Secondly, Chief Chaplin is being deposed today
 9   in his -- in connection with his former employment with
10   the San Francisco Police Department and only in that
11   capacity.  The Chief is now at a different police
12   department, leading it, but we've agreed with Plaintiffs'
13   counsel there will be no questions regarding his current
14   employment and that the entire focus of today's testimony
15   will just be in his capacity as a former San Francisco
16   City employee.
17       So stipulated?
18       MR. MULLANAX:  So stipulated.
19       MR. COWNAN:  Thank you.  I guess we'll get
20   started with Madam Court Reporter.
21          CHIEF TONEY CHAPLIN,
22   having been duly sworn/affirmed, testified as follows:
23            EXAMINATION
24   BY MR. MULLANAX:
25    Q.  Chief Chaplin, thank you for your appearance
```



**Page 5**

1 here today. We'll be done, I'm sure, in less than an
2 hour so that you can get back to work after we're
3 finished.
4     Have you reviewed any documents in preparation
5 for your testimony here today?
6   A.  No.
7   Q.  Have you been deposed before?
8   A.  I have; not for this, but I have historically.
9   Q.  And I'm sure you've testified in court many
10 times. So your testimony here today, I just want to
11 remind you, is under oath as if you were testifying in
12 court before a judge and jury. Do you understand that?
13   A.  Totally understood.
14   Q.  And if I ask you a question and you don't
15 understand it, please let me know, and I'll be happy to
16 re-ask it. Do you agree to do that?
17   A.  I do.
18   Q.  And also I'm only here to find out what you
19 know. I don't want you to speculate on anything. So if
20 I ask you a question and you just don't know, just let us
21 know that you don't know. Is that agreeable?
22   A.  Definitely.
23   Q.  First of all, could you give us a little
24 history -- just a quick synopsis of your rise through the
25 ranks of the San Francisco Police Department; for

**Page 6**

1 example, when you started the police department, and then
2 go up the ranks there.
3   A.  Sure. I started in 1990. I was in the police
4 academy Class 167. We began in June of 1990.
5     I was first promoted to the rank of inspector; I
6 do not recall the exact date of that. I was subsequently
7 promoted to the rank of sergeant and held the dual rank
8 status of a sergeant inspector. I held that rank for
9 years.
10    I then took the lieutenant's exam and was
11 promoted to lieutenant, and transferred out of that
12 assignment to a patrol assignment.
13    I then was promoted by Chief Greg Suhr -- well,
14 I'm sorry, I took over the homicide bureau.
15    And then after about a year in homicide, I
16 promoted to the rank of commander. During that time, I
17 took the exam for the rank of captain, and I was
18 appointed the civil service rank of captain, and I still
19 held the rank of commander at that particular time.
20    After that, I was promoted to deputy chief and
21 asked to start a new bureau.
22    And after that, I was the interim chief because
23 Greg Suhr at that point had resigned, slash, retired.
24    And after a search for a permanent chief and one
25 was picked, I was then appointed the civil service rank

**Page 7**

1 of assistant police chief to which I retired from.
2   Q.  Do you recall when you retired from the SFPD?
3   A.  Yeah; September 3rd of 2019.
4   Q.  During your time there -- what was your rank, do
5 you recall, in 2017?
6   A.  In 2017?
7   Q.  Yes, sir.
8   A.  Assistant police chief. For most of that year,
9 Chief Scott was sworn in. I was still the interim chief
10 for a good chunk of January of that year.
11   Q.  Then when Chief Scott was sworn in, you remained
12 at the police department for another couple years?
13   A.  I did.
14   Q.  That was the rank of assistant police chief; is
15 that correct?
16   A.  Yes.
17   Q.  In your position as assistant police chief, were
18 you involved in the promotional process?
19   A.  I was.
20   Q.  Can you please describe for us what your
21 involvement in the promotional process entailed?
22   A.  Just like the deputy chief, the assistant chief
23 would sit in and review the secondary criteria.
24   Q.  What is secondary criteria?
25   A.  It's the education, discipline records; it's

**Page 8**

1 basically review of the candidate's file to see if
2 they're eligible or not eligible for promotion.
3   Q.  Now, Is that when you all would sit in a room
4 and pass the files back and forth so you had an
5 opportunity to review the secondary criteria?
6   A.  They didn't go back and forth. They went around
7 the room. So you didn't take the file, give it to
8 somebody, and take it back. There was no discussion of
9 the files. They just made their way around. And each
10 person was responsible for individually inspecting and
11 making a recommendation based on their look of that file.
12   Q.  What is typically contained in the secondary
13 criteria file?
14   A.  It's the disciplinary records -- it's their
15 disciplinary records, their education records, any awards
16 that particular candidate received.
17   Q.  Does that include things like if they're
18 certified to speak another language or something like
19 that?
20   A.  I don't recall if that was in there.
21   Q.  Now, when you were in this -- I'm just -- I've
22 been calling it the promotional committee. Would that be
23 okay for purposes of this deposition?
24   A.  Yes.
25   Q.  And I'm going to ask more about the process, but

Page 25

1  to who was going -- generally who was going.
2      MR. MULLANAX: Let's go off the record.
3      (Recess.)
4      (Frederick Schiff joined the proceedings.)
5      MR. MULLANAX: Back on the record.
6   Q.  Chief, do you recall back around 2017 and the
7  2018 time period those rounds of promotions that were
8  going on then; were you aware of any complaints that some
9  of the officers were making about the promotional
10 process?
11   A.  I was not, other than your usual things.
12   Q.  The usual complaints that you hear?
13   A.  Yeah; like, it takes too long, you know,
14 why-not-me type of things.
15   Q.  Did you ever go to, like, any of the stations
16 like the Northern Station and explain about the
17 promotional process? Let me tell you what I heard was
18 that at one point you had gone to, I think, the Northern
19 Station, and I think there had been some complaints up
20 there. And you came and spoke on behalf of the Chief, I
21 suppose, about the promotional process. Do you recall
22 anything about that?
23   A.  It wasn't about the promotional process. It was
24 about departmental issues. And I don't remember the
25 exact content, but I remember specifically having a

Page 26

1  discussion with a female sergeant who said that she was
2  trying to get an audience with the Chief to discuss some
3  issues that she had particularly had, and he was not
4  receptive to meeting with her.
5   Q.  Now, at the time, Chief Scott came from the Los
6  Angeles Police Department; is that correct?
7   A.  That's correct.
8   Q.  And so in 2017 round of promotions, did he ever
9  ask you about any particular candidates that were up for
10 promotion?
11   A.  No, he did not. That was the -- that was the
12 whole purpose of the secondary criteria process is to
13 kind of refine the list and get it to him and have a list
14 of a condensed review of what we sat in the room and kind
15 of went through. But ultimately, he reads the files and
16 comes to his own conclusions and decisions.
17   Q.  When did you -- and I'm not asking for a
18 particular date. But in the process, how do you find out
19 what promotional decisions were made?
20   A.  Once he's done, he would speak to his admin
21 assistant chief. And at that time, it was Hector Sainez
22 who was the other assistant chief. He would provide the
23 information, and then we would sit down and go over the
24 list, and I was told who was being promoted. That was
25 not a time to go back and forth. The decision had been

Page 27

1  made at that point.
2      MR. MULLANAX; I believe that's all I have. Do
3  you have anything, Peter?
4      MR. COWNAN: No, I don't.
5      Let's go off the record.
6      MR. MULLANAX: Thank you for coming in today. I
7  appreciate it. It's no fun to deal with this kind of
8  stuff, but I appreciate it.
9      COURT REPORTER: Mr. Mullanax, how would you
10 like your copy of the transcript?
11     MR. MULLANAX: Electronic.
12     COURT REPORTER: Mr. Cownan, would you like a
13 copy of the transcript?
14     MR. COWNAN: Yes; we'd like electronic as well,
15 please.
16     (Proceedings concluded at 2:44 p.m.)

Page 28

```
 1                CERTIFICATE OF REPORTER
 2
 3        I, DONNA ARCHULETA, a Certified Shorthand
 4  Reporter of the State of California, hereby certify that
 5  the witness in the foregoing deposition was by me duly
 6  sworn/affirmed to tell the truth, the whole truth, and
 7  nothing but the truth in the within-entitled cause;
 8
 9        That said deposition was taken in shorthand by
10  me, a disinterested person, at the time and place therein
11  stated, and that the testimony of the said witness was
12  thereafter reduced to typewriting, by computer, under my
13  direction and supervision;
14
15        I further certify that I am not of counsel or
16  attorney for either or any of the parties to the said
17  deposition, nor in any way interested in the event of
18  this cause, and that I am not related to any of the
19  parties thereto.
20        IN WITNESS WHEREOF, I have hereunto set my had
21  this 3rd day of December, 2021.
22
23
24
             DONNA ARCHULETA, CSR NO. 11828
25
```

