1

2

3                    **UNITED STATES DISTRICT COURT**

4                  **NORTHERN DISTRICT OF CALIFORNIA**

5

6   **FREDERICK SCHIFF, ET AL.,**              CASE NO.  19-cv-03260-YGR

7              Plaintiffs**,**

8        vs.                                  **ORDER GRANTING, IN PART, AND DENYING,**
                                              **IN PART, DEFENDANTS' MOTION FOR**
9   **CITY AND COUNTY OF SAN FRANCISCO, ET**   **SUMMARY JUDGMENT**
    **AL.,**
10                                             Re: Dkt. No. 78
             Defendants**.**

11

12          Plaintiffs Glenn Brakel, Joseph Emanuel, Brian Greer, Clayton Harmston, Steven Haskell,

13   Daniel Kelly, Alexander Lentz, Brandon McKelley, Gerald Newbeck, David O'Keeffe, Frederick

14   Schiff, Steven Uang, and Thomas Walsh bring this action against San Francisco Police Chief

15   William Scott ("Chief Scott") and the City and County of San Francisco (the "City") for alleged

16   race and gender-based discrimination in the promotion of police officers within the San Francisco

17   Police Department ("SFPD").[1]  (*See generally*, Third Am. Compl., Dkt. No. 38 ("3AC").)

18          Plaintiffs allege that, when deciding whom to promote to the positions of sergeant,

19   lieutenant, and captain in 2017, 2018, and 2019 (the "Relevant Period"), Chief Scott, a black man,

20   intentionally discriminated against plaintiffs, twelve white men and one Asian man, on the basis of

21   plaintiffs' race and gender.  Plaintiffs assert claims for this alleged disparate treatment based on

22   four causes of action: (1) the Federal Civil Rights Act of 1866, 42 U.S.C. section 1981 ("Section

23   1981"); (2) the Fourteenth Amendment to the Constitution of the United States  pursuant to 42

24   U.S.C. section 1983 ("Section 1983"); (3) the Civil Rights Act of 1964, 42 U.S.C. section 2000e

25

26   ───────────────

27          [1] At oral argument on defendants' motion for summary judgment, plaintiffs Alice DiCroce,
     Micah Hope, and Christopher Ritter made an unopposed motion to dismiss all their claims, which
28   the Court granted on the record.

1   ("Title VII"); and (4) the California Fair Employment and Housing Act, Cal. Gov't Code section

2   12940(a) ("FEHA").  (3AC ¶¶ 69–78.)  Plaintiffs sue Chief Scott in his individual capacity under

3   their first and second causes of action and sue the City under all four causes of action, albeit only

4   the latter two are now pursued.[2]

5   Now before the Court is defendants' motion for summary judgment on all of plaintiffs'

6   claims.  (Defs.' Mot. for Sum. Jud., Dkt. No. 78. ("Mot.").)  Having carefully reviewed the

7   evidence and the briefing, having heard oral argument, and for the reasons set forth below,

8   defendants' motion is **DENIED** with respect to plaintiffs Brakel, Lentz, Harmston, Haskell, and

9   Newbeck and **GRANTED** with respect to plaintiffs Emanuel, Kelly, McKelley, O'Keefe, Uang,

10  Greer, Walsh, and Schiff.

## I.   EVIDENTIARY BACKGROUND

### A.   Plaintiffs' Allegations and Evidentiary Proffer

13  Plaintiffs are all San Francisco police officers who were eligible for but denied promotion

14  at various points during the Relevant Period during which defendant Scott was, and remains, Chief

15  of Police.  No dispute exists that in that role and pursuant to detailed procedures established by the

16  City, Chief Scott has ultimate authority to promote officers within the department.  As relevant

17  here, Chief Scott makes promotions from a closed universe of eligible, qualified candidates after

18  reviewing the recommendations of a panel of senior deputies who evaluate each candidate's

19  strengths and weaknesses and render individual, up-or-down votes on the candidate's promotion.

20  (*See* Am. Decl. of Peter A. Cownan In Sup. of Defs.' Mot., Ex. 3, Ex. 6, and Ex. 10, Dkt. Nos. 89,

21  89-3, 89-6, and 89-10; *id.*, Ex. 61, Dkt. No. 81-61 [Scott Dep. 25:2–9].)  Subject to rules limiting

22  the range of civil service examination scores within which candidates must fall to be promoted,

23  Chief Scott's promotion decisions are discretionary.  (Mem. of P. & A. In Supp. of Defs.' Mot.

---

25  [2] Plaintiffs' complaint asserted all four causes of action against the City and asserted their
26  first and second causes of action against Chief Scott.  *See* 3AC ¶¶ 69–78 (including headers).
    However, at oral argument on defendants' motion for summary judgment, plaintiffs conceded that
27  their Section 1981 and Section 1983 causes of action fail as against the City.  In light of this
    concession, defendants' motion is **GRANTED** as to the City on plaintiffs' first and second causes of
28  action with respect to all plaintiffs.

United States District Court
Northern District of California

10–12 ("Mem."); Decl. of M. Greg Mullanax In Supp. of Pls.' Opp'n to Defs.' Mot., Ex. O [Dep. of William Scott. 26:22–24].)  Plaintiffs allege that Chief Scott abused that discretion when selecting individuals to promote to sergeant, lieutenant, and captain in 2017, 2018, and 2019 by impermissibly discriminating against white men and Asian men on the basis of race and gender. (3AC ¶¶ 45–61, ¶¶ 63–67.)

In support of these allegations, plaintiffs' case is founded almost entirely on two "facts":

First, plaintiffs submit that Chief Scott publicly stated in 2017 that he considered racial and gender diversity in evaluating candidates during that year's promotions.  (Pls.' Opp'n to Defs.' Mot. ¶ 3, ¶ 6.)  Several witnesses testified generally to the fact that Chief Scott made such a statement, but a verbatim recordation is not available.[3]  A paraphrase of Chief Scott's statement was reported in a contemporaneous newsletter issued by the San Francisco Police Officers Association ("SFPOA").  It reported that, when asked to explain the promotions process used in 2017, Chief Scott replied as follows:

> Deputy chiefs reviewed all candidates' secondary criteria and determined if a candidate was eligible or not eligible for promotion. The chief then looks at the needs of the department.  He determines the diversity of experience, diversity or [*sic*] race, diversity of sex[,] and diversity of culture in determining who[m] he selects. . . .
>
> . . . Chief Scott stated [that] he picks from a pool of candidates [and] not [in] rank order.  Rank order is not the best route for the department.

(Mullanax Decl., Ex. E-1 [San Francisco Police Officers Association Journal, Vol. 49, No. 12] (paraphrasing Chief Scott).)

When presented at deposition with the above-quoted text from the SFPOA newsletter, Chief Scott testified that he does not use race or gender as criteria when evaluating candidates for promotion:

> Q.   Is that statement true [as stated in the newsletter]?
> A.   It, that statement is written, put in the context that I used diversity for race, sex, culture in determining who was

_____

[3] Mullanax Decl., Ex. E-1 [San Francisco Police Officers Association Journal, Vol. 49, No. 12], Ex. E [Dep. of Rick Andreotti Dep. 13–14], Ex. G [Dep. of Clayton Harmston 13–14], Ex. J [Dep. of Anthony Montoya 14, 15, and 17], Ex. N [Dep. of Frederick Schiff 165].

United States District Court
Northern District of California

3

selected, that is not true.

Q.   So do you dispute what is stated here in the minutes; is that right?

A.   I did talk about diversity.  But if that article is inferring or that summary of what I said is determining—is inferring or saying that I use race, sex[,] or culture as a selection criteria [*sic*], I don't—that is not accurate.

(Cownan Decl., Ex. 81-61 at 8 [Scott Dep. 18–19].)

Second, evidence exists that some black officers and some female officers were promoted before some white male and Asian male officers even though the black officers and female officers scored lower than the white male and Asian male officers on their civil service examinations.  (Opp'n ¶¶ 8–19; Mullanax Decl., Ex. A, Ex. B, and Ex. C, Dkt. Nos., 90-3, 90-4, 90-5[4]).  Neither Chief Scott nor the City dispute this data.  Nor do plaintiffs dispute that the scores on those exams are not the entire appropriate measure for promotion.[5]

---

[4] Exhibits A, B, and C to the Mullanax Declaration are modified copies of Exhibits A, B, and C to the declaration of Jennifer Lo submitted in support of defendants' motion.  (*Compare* Mullanax Decl., Dkt. No. 90-2, *with* Decl. of Jennifer Lo In Supp. of Defs.' Mot., Dkt. No. 83.)  In their original forms, Exhibits A, B, and C were omnibus lists of every person eligible for promotion to sergeant, lieutenant, and captain, respectively, during the Relevant Period.  Each list showed demographic data for the individuals listed therein.  According to defendants, these lists were created "in the normal course of business."  (Lo Decl. ¶¶ 3–5.)

Plaintiffs' counsel modified defendants' exhibits by adding color coding and annotations and attached them as Exhibits A through C to his own declaration in support of plaintiffs' opposition.  Therefore, the Court considers these exhibits to be demonstratives and their underlying data to be evidence.  That said, the demonstration fails to show actual discrimination because plaintiffs' Exhibits A through C do not indicate the *specific years*, within the ranges they encompass, in which each person identified therein was eligible for promotion or, indeed, whether some of them were eligible for promotion in prior years.  Given that these are omnibus lists, plaintiffs' apples-to-oranges comparison of *cumulative* eligibility over a three-year period with *year-by-year* promotions simply fails to draw intelligible comparisons of white male and Asian male promotions to black and female promotions.

Nonetheless, the Court has undertaken to extract the information contained in these tables and performed its own analyses thereof.

[5] At deposition, plaintiffs generally conceded this point.  (Cownan Decl., Ex. 50 [Brakel Dep. 22:9-23:11]; Ex. 51 [Emanuel Dep. 53:15-56:7]; Ex. 53 [Harmston Dep. 35:11-36:1]; Ex. 55 [Kelly Dep. 23:6-16, 23:21-24:8]; Ex. 56 [Lentz Dep. 29:15- 30-25]; Ex. 57 [McKelley Dep. 23:22-24:12]; Ex. 58 [Newbeck Dep. 66:10-68:6]; Ex. 60 [Schiff Dep. 92:6-12]; Ex. 63 [Uang Dep. 48:19-49:8].  Others were slightly equivocal, hedged, or imprecise.  *Id.*, Ex. 52 [Greer Dep. 23:9-28:15]; Ex. 54 [Haskell Dep. 39:1-40:9]; Ex. 64 [Walsh Dep. at 55:5-17].)  However, any ambiguity in plaintiffs' view of this matter was resolved in the separate statement of undisputed material facts that plaintiffs filed with their opposition to defendants' motion, in which plaintiffs

Importantly, plaintiffs do not identify any particularized evidence of discrimination against any of them in the course of their individual promotions.  Instead, as noted above, plaintiffs rely solely on Chief Scott's blanket statement for the inference of discrimination on the basis of race and gender and on the data referenced.[6]  (*See* 3AC ¶¶ 45–61; Opp'n ¶¶ 9–19.)  Likewise, plaintiffs do not proffer any statistical evidence of race or gender animus.

## B.   Evidence as to Individual Plaintiffs

By contrast, defendants do proffer individualized evidence demonstrating a measure of how each plaintiff was evaluated for promotion during the Relevant Period.  This evidence is comprised of the candidate reviews provided by panels of senior officers to Chief Scott, not of reviews performed by Chief Scott himself. (Cownan Decl., Ex. 3, Ex. 6, and Ex. 10.)  Evidence for each plaintiff is outlined below.[7]

### 1.   Candidates for Sergeant

**Plaintiff Brakel:**  Brakel was eligible for promotion to sergeant in 2017, 2018, and 2019.

In 2017, seven of seven reviewers recommended Brakel for promotion.  (Cownan Decl., Ex. 3.)  However, his evaluators noted a lack of training and awards, as well as a "thin" application.  (*Id.*)  He was not promoted in 2017.  (*Id.*)  That year, and despite having lower civil service examination scores, promotions included three whites, four blacks, four Hispanics, six Asians, and three others.  Of these twenty promotions, thirteen were men and seven were women.

In 2018, five of six reviewers recommended Brakel for promotion and one abstained.  (*Id.*, Ex. 6.)  His evaluators noted "weak" supporting factors and a lack of education.  (*Id.*)  That year, and despite having lower civil service examination scores were thirteen whites, three blacks, three

---

all definitively conceded that factors other than test scores may permissibly be considered in the making of promotions.  *See infra*, n. 16.

[6] Though plaintiffs do not identify any direct evidence of discrimination, plaintiffs alleging disparate treatment are entitled to rely entirely on circumstantial evidence.  *McGinest v. GTE Serv. Corp.*, 360 F. 3d 1103, 1122 (9th Cir. 2004) ("[T]he plaintiff in a disparate treatment case must show the employer's intent to discriminate, but intent may be inferred from circumstantial evidence." (quoting prior cases)). *See also, infra*, n. 8.

[7] Neither party has challenged the authenticity or admissibility of any of the opposing party's evidence.

United States District Court
Northern District of California

Hispanics, two Asians, and one other.  Of these twenty-two, nineteen were men and three were women.

By 2019, six of six reviewers recommended Brakel for promotion.[8]  (*Id*., Ex. 10.)  The records provided did not show any abstentions or negative comments.  That year, Brakel was promoted.  Accordingly, Brakel only brings claims for 2017 and 2018.

**Plaintiff Emanuel:** Emanuel was eligible for promotion in 2017, 2018, and 2019.

In 2017, four of seven reviewers recommended Emanuel for promotion and three recommended not promoting him.  (*Id.*, Ex. 3.)  His evaluators noted several issues in his record, including a reprimand for buying goods from a "known fence" and a neglect of duty incident.  (*Id.*)  He was not promoted in 2017.  (*Id.*)  That year, and despite having lower civil service examination scores, promotions included six whites, five blacks, five Hispanics, seven Asians, and four others.  Of these twenty-seven promotions, eighteen were men and nine were women.

In 2018, five of six evaluators recommended promoting Emanuel and one abstained. (*Id.*, Ex. 6.)  His evaluators noted his disciplinary history and lack of education.  (*Id.*)  He was not promoted in 2018.  That year, and despite having lower civil service examination scores, promotions included seventeen whites, three blacks, four Hispanics, three Asians, and three others.  Of these thirty promotions, twenty-six were men and four were women.

By 2019, six of six evaluators recommended Emanuel for promotion.  (*Id.*, Ex. 10.)  His evaluators noted internal affairs issues and a lack of education.  (*Id.*)  Nonetheless, Chief Scott promoted Emanuel that year.  Accordingly, Emanuel only brings claims for 2017 and 2018.

**Plaintiff Kelly:** Kelly was eligible for promotion in 2017, 2018, and 2019.

In 2017, seven of seven reviewers recommended Kelly for promotion.  (Cownan Decl., Ex. 3.)  His evaluators noted a lack of training and a thin application.  (*Id.*)  He was not promoted in 2017.  (*Id.*)  That year, and despite having lower civil service examination scores, promotions

---

[8] Exhibit 10 to the Cownan Declaration gives rise to the inference that the panel of senior officers reviewing applications and making promotion recommendations to Chief Scott during the 2019 sergeant promotion round was only comprised of six individuals.  The Court's analysis proceeds on the basis of that inference.

United States District Court
Northern District of California

included three whites, four blacks, five Hispanics, seven Asians, and three others. Of these twenty-two promotions, fifteen were men and seven were women.

In 2018, four of six evaluators recommended promoting Kelly, one recommended not promoting him, and one abstained. (*Id.*, Ex. 6.) His evaluators noted disciplinary history, a lackluster record, and limited professional experience. (*Id.*) He was not promoted in 2018. That year, and despite having lower civil service examination scores, promotions included fourteen whites, three blacks, three Hispanics, two Asians, and one other. Of these twenty-three promotions, twenty were men and three were women.

By 2019, six of six evaluators recommended Kelly for promotion. (*Id.*, Ex. 10.) His evaluators noted no concerns regarding his application. (*Id.*) Chief Scott promoted Kelly that year. Accordingly, Kelly only brings claims for 2017 and 2018.

**Plaintiff Lentz:** Lentz was eligible for promotion in 2017, 2018, and 2019.

In 2017, seven of seven reviewers recommended Lentz for promotion. (Cownan Decl., Ex. 3.) His evaluators noted a lack of experience. (*Id.*) He was not promoted in 2017. (*Id.*) That year, and despite having lower civil service examination scores, promotions included ten whites, six blacks, eight Hispanics, seven Asians, and six others. Of these thirty-seven promotions, twenty-four were men and thirteen were women.

In 2018, five out of six evaluators recommended promoting Lentz and one abstained. (*Id.*, Ex. 6.) His evaluators noted lack of education and an incomplete biography. (*Id.*) He was not promoted in 2018. That year, and despite having lower civil service examination scores, promotions included twenty-three whites, three blacks, four Hispanics, three Asians, and four others. Of these thirty-seven promotions, thirty-two were men and five were women.

By 2019, six of six evaluators recommended Lentz for promotion. (*Id.*, Ex. 10.) His evaluators noted his lack of education. (*Id.*) Nonetheless, Chief Scott promoted Lentz that year. Accordingly, Lentz only brings claims for 2017 and 2018.

**Plaintiff McKelley:** McKelley was eligible for promotion in 2017, 2018, and 2019.

In 2017, seven of seven reviewers recommended McKelley for promotion. (*Id.*, Ex. 3.) His evaluators noted a lack of experience, a bare minimum of qualifications, and a thin

application.  (*Id.*)  He was not promoted in 2017.  (*Id.*)  That year, and despite having lower civil service examination scores, promotions included eleven whites, six blacks, eight Hispanics, seven Asians, and six others.  Of these thirty-eight promotions, twenty-five were men and thirteen were women.

In 2018, four of six evaluators recommended promoting McKelley, one recommended not promoting him, and one abstained. (*Id.*, Ex. 6.)  His evaluators noted a lack of education, a lack of training, a lack of field experience, and a lack of professional development.  (*Id.*)  He was not promoted in 2018.  That year, and despite having lower civil service examination scores, promotions included twenty-four whites, three blacks, four Hispanics, three Asians, and four others.  Of these thirty-eight promotions, thirty-three were men and five were women.

By 2019, six of six evaluators recommended McKelley for promotion.  (*Id.*, Ex. 10.)  His evaluators noted lack of education and a thin application.  (*Id.*)  Nonetheless, Chief Scott promoted McKelley that year.  Accordingly, McKelley only brings claims for 2017 and 2018.

**Plaintiff O'Keefe:** O'Keefe was eligible for promotion in 2017, 2018, and 2019.

In 2017, five of seven reviewers recommended O'Keefe for promotion and two recommended not promoting him.  (Cownan Decl., Ex. 3.)  His evaluators noted a bare minimum of training and a discipline issue.  (*Id.*)  He was not promoted in 2017.  (*Id.*)  That year, and despite having lower civil service examination scores, promotions included three whites, four blacks, five Hispanics, seven Asians, and three others.  Of these twenty-two promotions, fifteen were men and seven were women.

In 2018, five of six evaluators recommended promoting O'Keefe and one abstained.  (*Id.*, Ex. 6.)  His evaluators noted disciplinary history and lack of professional development.  (*Id.*)  He was not promoted in 2018.  That year, and despite having lower civil service examination scores, promotions included thirteen whites, three blacks, three Hispanics, two Asians, and one other.  Of these twenty-two promotions, nineteen were men and three were women.

By 2019, five evaluators recommended O'Keefe for promotion and one objected.  (*Id.*, Ex. 10.)  His evaluators noted a recent disciplinary reprimand.  (*Id.*)  Nonetheless, Chief Scott promoted O'Keefe that year.  Accordingly, O'Keefe only brings claims for 2017 and 2018.

**Plaintiff Uang:** Uang was eligible for promotion in 2017, 2018, and 2019.

In 2017, two of seven reviewers recommended Uang for promotion and five recommended not promoting him.  (*Id.*, Ex. 3.)  His evaluators noted a "[c]onsistent[,] on-going pattern of neglect of duty . . . ."  (*Id.*)  He was not promoted in 2017.  (*Id.*)  That year, and despite having lower civil service examination scores, promotions included three whites, four blacks, five Hispanics, seven Asians, and three others.  Of these twenty-two promotions, fifteen were men and seven were women.

In 2018, two of six evaluators recommended promoting Uang, three recommended not promoting him, and one abstained. (*Id.*, Ex. 6.)  His evaluators noted disciplinary history, including a suspension within the prior five years.  (*Id.*)  He was not promoted in 2018.  That year, and despite having lower civil service examination scores, promotions included fourteen whites, three blacks, three Hispanics, two Asians, and one other.  Of these twenty-three promotions, twenty were men and three were women.

By 2019, two of six evaluators recommended Uang for promotion and four recommended not promoting him.  (*Id.*, Ex. 10.)  His evaluators noted internal affairs issues, his prior suspension, and a general lack of judgment.  (*Id.*)  Uang was not promoted in 2019.  That year, and despite having lower civil service examination scores, promotions included thirty whites, four blacks, seven Hispanics, eight Asians, and six others.  Of these fifty-five promotions, forty-nine were men and six were women.

Accordingly, Uang brings claims for 2017, 2018, and 2019.

### 2.  *Candidates for Lieutenant*

**Plaintiff Greer:** Greer was eligible for promotion in 2017, 2018, and 2019.

In 2017, four of seven reviewers recommended Greer for promotion and three recommended not promoting him.  (*Id.*, Ex. 14.)  His evaluators noted a lack of general readiness. (*Id.*)  He was not promoted in 2017.  (*Id.*)  That year, and despite having lower civil service examination scores, promotions included five whites, three blacks, five Hispanics, two Asians, and one other.  Of these sixteen promotions, ten were men and six were women.

1   In 2018, four out of six evaluators recommended promoting Greer, one recommended not

2   promoting him, and one abstained. (*Id.*, Ex. 17.)  His evaluators noted a failure to follow

3   instructions and lack of professional development.  (*Id.*)  He was not promoted in 2018.  That year,

4   and despite having lower civil service examination scores, promotions included eight whites, one

5   black, three Hispanics, zero Asians, and zero others.  Of these twelve promotions, nine were men

6   and three were women.

7   By 2019, six of six evaluators recommended Greer for promotion.[9] (*Id.*, Ex. 21.)  His

8   evaluators noted no concerns regarding his application.  (*Id.*)  Chief Scott promoted Greer that

9   year.  Accordingly, Greer only brings claims for 2017 and 2018.

10   **Plaintiff Harmston:** Harmston was eligible for promotion in 2017, 2018, and 2019.

11   In 2017, seven of seven reviewers recommended Harmston for promotion.  (*Id.*, Ex. 14.)

12   His evaluators noted a lack of experience and a lack of professional development.  (*Id.*)  He was

13   not promoted in 2017.  (*Id.*)  That year, and despite having lower civil service examination scores,

14   promotions included four whites, three blacks, five Hispanics, two Asians, and one other.  Of

15   these fifteen promotions, nine were men and six were women.

16   In 2018, five of six evaluators recommended promoting Harmston and one abstained. (*Id.*,

17   Ex. 17.)  His evaluators noted a lack of professional development.  (*Id.*)  He was not promoted in

18   2018.  That year, and despite having lower civil service examination scores, promotions included

19   eight whites, one black, three Hispanics, zero Asians, and zero others.  Of these twelve

20   promotions, nine were men and three were women.

21   By 2019, six of six evaluators recommended Harmston for promotion.  (*Id.*, Ex. 21.)  His

22   evaluators noted no concerns regarding his application.  (*Id.*)  Chief Scott promoted Harmston that

23   year.  Accordingly, Harmston only brings claims for 2017 and 2018.

24

25

26   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27   [9] Exhibit 21 to the Cownan Declaration gives rise to the inference that the panel of senior officers reviewing applications and making promotion recommendations to Chief Scott during the 2019 lieutenant promotion round was only comprised of six individuals.  The Court's analysis

28   proceeds on the basis of that inference.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

United States District Court
Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiff Haskell:** Haskell was eligible for promotion in 2018 and 2019.

In 2018, five of six reviewers recommended Haskell for promotion and one abstained. (*Id.*, Ex. 17.)  His evaluators noted a lack of education.  (*Id.*)  He was not promoted in 2018.  That year, and despite having lower civil service examination scores, promotions included one white, zero blacks, two Hispanics, zero Asians, and zero others.  Of these three promotions, two were men and one was a woman.

In 2019, six of six evaluators recommended promoting Haskell.  (*Id.*, Ex. 21.)  His evaluators noted a lack of education.  (*Id.*)  He was not promoted in 2019.  That year, and despite having lower civil service examination scores, promotions included nine whites, three blacks, one Hispanic, one Asian, and one other.  Of these fifteen promotions, eleven were men and four were women.

Accordingly, Haskell only brings claims for 2018 and 2019.

**Plaintiff Newbeck:** Newbeck was eligible for promotion in 2017 and 2018.

In 2017, seven of seven reviewers recommended Newbeck for promotion.  (Cownan Decl., Ex. 14.)  His evaluators noted no concerns with his application.  (*Id.*)  He was not promoted in 2017.  (*Id.*)  That year, and despite having lower civil service examination scores, promotions included two whites, two blacks, three Hispanics, one Asians, and zero others.  Of these eight promotions, four were men and four were women.

In 2018, five of six evaluators recommended promoting Newbeck and one abstained. (*Id.*, Ex. 17.)  His evaluators noted no concerns with his application.  (*Id.*)  Chief Scott promoted Newbeck in 2018.  Accordingly, Newbeck only brings claims for 2017.

**Plaintiff Walsh:** Walsh was eligible for promotion in 2017, 2018, and 2019.

In 2017, two of seven reviewers recommended Walsh for promotion and five recommended not promoting him.  (*Id.*, Ex. 14.)  His evaluators noted disciplinary issues.  (*Id.*) He was not promoted in 2017.  (*Id.*)  That year, and despite having lower civil service examination scores, promotions included four whites, three blacks, five Hispanics, two Asians, and one other.  Of these fifteen promotions, nine were men and six were women.

In 2018, four of six evaluators recommended promoting Walsh, one recommended not

promoting him, and one abstained. (*Id.*, Ex. 17.)  His evaluators noted disciplinary issues.  (*Id.*)

He was not promoted in 2018.  That year, and despite having lower civil service examination

scores, promotions included eight whites, one black, three Hispanics, zero Asians, and zero others.

Of these twelve promotions, nine were men and three were women.

By 2019, six of six evaluators recommended Walsh for promotion.  (*Id.*, Ex. 21.)  His

evaluators noted no concerns regarding his application.  (*Id.*)  Chief Scott promoted Walsh that

year.  Accordingly, Walsh only brings claims for 2017 and 2018.

### 3.   Candidate for Captain

**Plaintiff Schiff:** Schiff was eligible for promotion in 2017, 2018, and 2019.

In 2017, three of seven reviewers recommended Schiff for promotion, three recommended

not promoting him, and one abstained.  (*Id.*, Ex. 26.)  His evaluators noted a pending disciplinary

action.  (*Id.*)  He was not promoted in 2017.  (*Id.*)  That year, and despite having lower civil

service examination scores, promotions included two whites, two blacks, zero Hispanics, one

Asians, and no others.  Of these five promotions, two were men and three were women.

In 2018, four of six evaluators recommended promoting Schiff, one recommended not

promoting him, and one abstained. (*Id.*, Ex. 29.)  His evaluators noted a history of disciplinary

issues, conduct unbecoming an officer, and failure to follow instructions.  (*Id.*)  He was not

promoted in 2018.  That year, and despite having lower civil service examination scores,

promotions included three whites, one black, one Hispanic, one Asian, and zero others.  Of these

six promotions, four were men and two were women.

By 2019, five of six evaluators recommended Schiff for promotion and one abstained.[10]

(*Id.*, Ex. 32.)  His evaluators noted a possible misstatement on his application.  (*Id.*)  Nonetheless,

Chief Scott promoted Schiff that year.  Accordingly, Schiff only brings claims for 2017 and 2018.

---

[10] Exhibit 32 to the Cownan Declaration gives rise to the inference that the panel of senior officers reviewing applications and making promotion recommendations to Chief Scott during the 2019 captain promotion round was only comprised of six individuals.  The Court's analysis proceeds on the basis of that inference.

United States District Court
Northern District of California

United States District Court
Northern District of California

C.      **Evidence of Chief Scott's Promotion Trends**

The facts as presented in this section reflect the Court's own observations of and basic calculations performed on the information contained in plaintiffs' Exhibits A, B, and C. (*See* Mullanax Decl., Ex. A, Ex. B, and Ex. C, Dkt. Nos. 90-3, 90-4, 90-5.)

1.      *Sergeant Promotions*

During the Relevant Period, 187 people were promoted to sergeant.  By race, 99 were white, 14 were black, 26 were Hispanic, 24 were Asian, and 24 were other.  That is, 53% were white, and 13% were Asian.  By gender, 155 were men and 32 were women.  That is, 83% were men.  By plaintiffs' intersectional attributes, 84 were white men and 18 were Asian men.  That is, 45% were white men and 10% were Asian men.

In 2017, 76 people were promoted.  By race, 31 were white, 7 were black, 15 were Hispanic, 12 were Asian, and 11 were other.  That is, 41% were white and 16% were Asian.  By gender, 55 were men and 21 were women.  That is, 72% were men.  By plaintiffs' intersectional attributes, 21 were white men and 7 were Asian men.  That is, 28% were white men and 9% were Asian men.

In 2018, 45 people were promoted.  By race, 29 were white, 3 were black, 4 were Hispanic, 3 were Asian, and 6 were other.  That is, 64% were white and 7% were Asian.  By gender, 40 were men and 5 were women.  That is, 89% were men.  By plaintiffs' intersectional attributes, 28 were white men and 3 were Asian men.  That is, 62% were white men and 7% were Asian men.

In 2019, 66 people were promoted.  By race, 39 were white, 4 were black, 7 were Hispanic, 9 were Asian, and 7 were other.  That is, 60% were white and 14% were Asian.  By gender, 60 were men and 6 were women.  That is, 91% were men.  By plaintiffs' intersectional attributes, 36 were white men and 8 were Asian men.  That is, 55% were white men and 12% were Asian men.

2.      *Lieutenant Promotions*

During the Relevant Period, 66 people were promoted to lieutenant.  By race, 41 were white, 8 were black, 10 were Hispanic, 5 were Asian, and 2 were other.  That is, 62% were white

and 8% were Asian.  By gender, 50 were men and 16 were women.  That is, 76% were men.  By plaintiffs' intersectional attributes, 32 were white men and 2 were Asian men.  That is, 48% white men and 8% were Asian men.

In 2017, 30 people were promoted.  By race, 16 were white, 4 were black, 6 were Hispanic, 3 were Asian, and 1 was other.  That is, 53% were white and 10% were Asian.  By gender, 21 were men and 9 were women.  That is, 70% were men.  By plaintiffs' intersectional attributes, 11 were white men and 3 were Asian men.  That is, 37% were white men and 10% were Asian men.

In 2018, 15 people were promoted.  By race, 11 were white, 1 was black, 3 were Hispanic, 0 were Asian, and 0 were other.  That is, 73% were white and 0% were Asian.  By gender, 12 were men and 3 were women.  That is, 80% were men.  By plaintiffs' intersectional attributes, 10 were white men and 0 were Asian men.  That is, 67% were white men and 0% were Asian men.

In 2019, 21 people were promoted.  By race, 14 were white, 3 were black, 1 was Hispanic, 2 were Asian, and 1 was other.  That is, 67% were white and 10% were Asian.  By gender, 17 were men and 4 were women.  That is, 81% were men.  By plaintiffs' intersectional attributes, 11 were white men and 2 were Asian men.  That is, 52% were white men and 10% were Asian men.

### 3.   Captain Promotions

During the Relevant Period, 22 people were promoted to captain.  By race, 10 were white, 6 were black, 1 was Hispanic, 5 were Asian, and 0 were other.  That is, 45% were white and 23% were Asian.  By gender, 16 were men and 6 were women.  That is, 73% were men.  By plaintiffs' intersectional attributes, 7 were white men and 5 were Asian men.  That is, 32% were white men and 23% were Asian men.

In 2017, 9 people were promoted.  By race, 4 were white, 3 were black, 0 were Hispanic, 2 were Asian, and 0 were other.  That is, 44% were white and 22% were Asian.  By gender, 6 men and 3 were women.  That is, 67% were men.  By plaintiffs' intersectional attributes, 3 white men and 2 were Asian men.  That is, 33% were white men and 22% were Asian men.

In 2018, 6 people were promoted.  By race, 3 were white, 1 was black, 1 was Hispanic, 1 was Asian, and 0 were other.  That is, 50% were white and 17% were Asian.  By gender, 4 were

United States District Court
Northern District of California

1   men and 2 were women.  That is, 67% were men.  By plaintiffs' intersectional attributes, 1 was a

2   white man and 1 was an Asian man.  That is, 17% were white men and 17% were Asian men.

3       In 2019, 7 people were promoted.  By race, 3 were white, 2 were black, 0 were Hispanic, 2

4   were Asian, and 0 were other.  That is, 43% were white and 29% were Asian.  By gender, 6 were

5   men and 1 was a woman.  That is, 86% were men.  By plaintiffs' intersectional attributes, 3 were

6   white men and 2 were Asian men.  That is, 43% were white men and 29% were Asian men.

## II.   LEGAL STANDARD

8       The parties do not dispute the general summary judgment standard, which is well-known

9   and well-established, including the inferences to be given and the burdens to be borne.  FED. R.

10  CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (hereinafter "*Celotex*");

11  *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987).  Therefore, the Court only

12  emphasizes three aspects of summary judgment that are especially relevant here:

13      First, summary judgment must be granted when "the movant shows that there is no

14  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

15  FED. R. CIV. P. 56(a).  A dispute is genuine if sufficient evidence exists for a reasonable jury to

16  find for the opposing party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986); *see*

17  *Fresno Motors, LLC v. Mercedes-Benz USA*, LLC 771 F. 3d 1119, 1125 (9th Cir. 2014).  A fact is

18  material if it might affect the outcome of the case.  *Id.* at 248.  In the normal course, the outcome

19  of a case is determined by a plaintiff's ability to prove all the essential elements of its claims.

20  *Celotex* at 323.  Failure to prove even one element of a plaintiff's claims "necessarily renders all

21  other facts immaterial."  *Id.*

22      Second, a defendant moving for summary judgment may carry its initial burden of

23  production by showing that the plaintiff lacks sufficient evidence to carry its ultimate burden of

24  persuasion at trial.  FED. R. CIV. P. 56(c)(1)(B); *Celotex* at 325; *Soremekun v. Thrifty Payless, Inc.*,

25  509 F. 3d 978, 984 (9th Cir. 2007); *Nissan Fire & Marine Ins. Co., Ltd. v. City of Taylor*, 210

26  F. 3d 1099, 1102 (9th Cir. 2000).  To survive summary judgment, the plaintiff must then identify

27  "specific" and "significantly probative" evidence to support its claims such that a reasonable jury

28  could find for the plaintiff at trial. *Soremekun*, 509 F. 3d at 984; *Anderson*, 477 U.S. at 250.  If the

United States District Court
Northern District of California

plaintiff does not or cannot do so, defendant has met its burden of persuasion.

Third, in determining whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan,* 91 F. 3d 1275, 1279 (9th Cir.1996) (internal quotations omitted).  Rather, a court is entitled to "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.* (quoting *Richards v. Combined Ins. Co.*, 55 F. 3d 247, 251 (7th Cir. 1995)) (quoted by *Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*, 729 F. App'x 590, 591 (9th Cir. 2018) (mem.)).

Accordingly, a defendant prevails on summary judgment if it shows that a reasonable jury could not find an essential element of a plaintiff's claims. FED. R. CIV. P. 56(c)(1)(B); *Celotex* at 325; *Soremekun*, 509 F.3d at 984; *Nissan Fire*, 210 F.3d at 1102.  In determining whether a defendant has made such a showing, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact . . . ." *Carmen v. San Francisco Unified School Dist.*, 237 F. 3d 1026, 1031 (9th Cir. 2001).

### III.   ANALYSIS

#### A.   Overview

As noted at the outset of this order, the Court evaluates plaintiffs' claims as against defendant Scott only with respect to Section 1981[11] and Section 1983[12], and as against the City only with respect to Title VII[13] and FEHA[14].  These causes of action all relate to plaintiffs' civil

---

[11] The elements of this claim are that (i) plaintiff was a member of a protected class; (ii) defendant failed to promote plaintiff; (iii) racial animus was the but-for cause of defendants' failure to promote plaintiff. *Comcast Corporation v. National Association of African American American-Owned Media, et al.*, 140 S. Ct. 1009, 1013–1014 (2020) (supplanting the Ninth Circuit's prior "some-role" causation standard for Section 1981 claims with an exacting but-for causation standard).  Here, the parties only dispute the third element.

[12] Here, each plaintiff must prove that the complained-of "government action was motivated by a discriminatory purpose." *Ballou v. McElvain*, 29 F. 4th 413, 422 (9th Cir. 2022). This broad inquiry is to be resolved in the same way as plaintiff's Title VII claims. *See infra*, n. 13.

[13] The elements of this claim are that (i) plaintiff was not promoted; (ii) racial animus and/or gender animus was the but-for cause of defendants' failure to promote plaintiff; (iii) plaintiff was qualified for the position sought; and (iv) similarly situated individuals outside of

United States District Court
Northern District of California

United States District Court
Northern District of California

rights and share significantly overlapping elements. Further, all share the element regarding the existence of race or gender-based animus which, plaintiffs argue, is the element in dispute. Plaintiffs also confirmed at the hearing on defendants' motion that all claims are brought as "disparate treatment" claims.

"[D]isparate-treatment cases present the most easily understood type of discrimination and occur where an employer has treated [a] particular person less favorably than others because of a protected trait. A disparate-treatment plaintiff must establish that the defendant had a discriminatory *intent* or *motive* for taking a job-related action." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (quoting *Teamsters v. United States*, 431 U.S. 324, 335, n. 15, (1977), *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985–986 (1988)) (citation simplified) (emphases supplied). In other words, in a disparate treatment claim, the question is whether the employer intended to discriminate against the plaintiff on an impermissible basis, *i.e.*, was motivated by the plaintiff's membership in a protected class to take the adverse employment action subject of the litigation.

With respect to this kind of case, the Court applies the burden-shifting framework established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 807 (1973).[15] Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of disparate treatment

---

plaintiff's race and/or gender were treated more favorably. Here, the parties only dispute the second element.

[14] The elements of this claim are that (i) the City was an employer; (ii) the plaintiff was an employee of the City; (iii) the City refused to promote the plaintiff; (iv) the plaintiff's race was a substantial motivating reason for the City's refusal to promote the plaintiff; (v) the plaintiff was harmed; and (vi) the City's conduct was a substantial factor in causing the plaintiff's harm. *See* Judicial Council of California, CACI No. 2500—Disparate Treatment (Gov. Code § 12940(a)) (2022) (collecting numerous judicial authorities). Here, the parties do not dispute the first three elements. The plaintiffs' claim hinges on the fourth element. The fifth and sixth elements would naturally flow therefrom and are not the basis of the defendants' motion.

[15] Though *McDonnell Douglas* was a Title VII case, its framework has since been expanded to reach most other kinds of civil rights claims. As relevant here, see *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989) (Section 1981), *Ballou v. McElvain*, 29 F. 4th 413, 422 (9th Cir. 2022) (Equal Protection Clause), and *Schechner v. KPIX-TV*, 686 F.3d 1018, 1023 (9th Cir. 2012) (FEHA) ("California applies the *McDonnell Douglas* burden-shifting framework and other federal employment law principles when interpreting the FEHA.") (citing *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317 (2000)).

discrimination by showing that the plaintiff: (1) belongs to a protected class; (2) was performing the job satisfactorily (or was qualified for a position for which the plaintiff applied); and (3) was subject to an adverse employment action; and that (4) similarly situated individuals outside of plaintiff's protected class were treated more favorably. *Chuang v. University of Cal. Davis, Bd. of Trustees,* 225 F. 3d 1115, 1123 (9th Cir. 2000); *Coleman v. Quaker Oats Co.,* 232 F. 3d 1271, 1281 (9th Cir. 2000); *see Aragon v. Republic Silver State Disposal Inc.,* 292 F. 3d 654, 658 (9th Cir. 2002). Employees "are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles,* 349 F. 3d 634, 641 (9th Cir. 2003).

If a plaintiff succeeds in establishing a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. If the defendant does so, the plaintiff must demonstrate that the defendant's articulated reason is a pretext for unlawful discrimination "by either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Aragon,* 292 F. 3d at 658–59 (internal quotations and citations omitted); *Godwin [v. Hunt Wesson, Inc.*, 150 F. 3d 1217, 1220 (9th Cir. 1998)]. To establish pretext, very little direct evidence of discriminatory motive is required, but if circumstantial evidence is offered, such evidence has to be "specific" and "substantial." *Id.* at 1222; *Cornwell v. Electra Central Credit Union,* 439 F.3d 1018, 1028 n. 6 (9th Cir. 2006) (merely denying the credibility of defendant's proffered reason for the challenged employment action or relying solely [on] plaintiff's subjective beliefs that the action was unnecessary are insufficient to show pretext); *Wallis v. J.R. Simplot Co.,* 26 F. 3d 885, 890 (9th Cir. 1994) ("a plaintiff cannot defeat summary judgment simply by making out a *prima facie* case" to show pretext or "denying the credibility of the [defendant's] witnesses") (internal citations omitted) (alteration in original).

## B.     Disparate Treatment:  *McDonnell Douglas*

### 1.     *Step One: Plaintiffs' Prima Facie Case of Discrimination*

The parties do not dispute that plaintiffs were white, Asian, and male, *i.e.*, were members of protected classes. For purposes of this motion, the parties do not dispute that plaintiffs were

United States District Court
Northern District of California

United States District Court
Northern District of California

1   eligible for promotion, *i.e.*, met at least the minimum qualifications for the positions for which

2   they applied.  The parties do not dispute that the plaintiffs were not promoted, *i.e.*, subject to an

3   adverse employment decision.

4         Considering, in the light most favorable to the plaintiffs, the evidence of Chief Scott's

5   2017 statement that he relied on race and gender in making promotion decisions, the Court finds

6   that plaintiffs have made an adequate showing that similarly situated individuals outside of their

7   classes were treated more favorably than they were.  The Court understands that a contrary

8   narrative exists regarding the meaning of Chief Scott's statement, but the statement nonetheless

9   constitutes circumstantial evidence of racial or gender animus.  *See Soremekun v. Thrifty Payless,*

10  *Inc.*, 509 F. 3d 978, 984 (9th Cir. 2007).  Furthermore, because Chief Scott's actions were not

11  challenged in 2017, one may reasonably infer that he continued to rely on race and gender in 2018

12  and 2019.  One may also infer that Chief Scott's statement, being general in nature, applied to

13  every instance in which he reviewed an application for promotion.  However, with each level of

14  abstraction, the circumstantial evidence becomes more attenuated.  That said, having established a

15  *prima facie* case, the burden shifts to defendants to show legitimate, non-discriminatory reasons

16  for not promoting plaintiffs.

17        2.    *Step Two: Defendants' Evidence of Non-Discriminatory Reasons for Not*

18            *Promoting Plaintiffs*

19        Chief Scott categorically denies using race and gender to select individuals to promote.

20  (Cownan Decl., Dkt. No. 81-61 [Ex. 61, Scott Dep. 18:13–19:3, 41:9–11].)  For purposes of

21  summary judgment, his denial alone is insufficient to rebut plaintiff's *prima facie* case because it

22  could be self-serving and requires a credibility determination.  However, defendants proffer other,

23  more objective evidence that is unique to each plaintiff. The Court evaluates such evidence as to

24  each plaintiff individually.

25        a.    <u>Sergeant Candidates</u>

26      **Plaintiff Brakel:**  As reviewed above, defendants proffer evidence identifying reasons for

27  not promoting Brakel to sergeant in 2017 and 2018, the only years at issue in his case; in

28  summary, these were lack of training and a "thin application".  *See infra*, Part I.B.1.  However,

these reasons did not dissuade evaluators from recommending promotion 7-0 in 2017 and 5-0 in 2018. *Infra*, Part I.B.1. Without more, the Court cannot determine how Chief Scott chose not to promote Brakel in light of the evidence from the *prima facie* case. Therefore, defendants have failed to meet their burden of production as to Brakel. The motion for summary judgment as to plaintiff Brakel is **DENIED**.

**Plaintiff Emanuel:** As reviewed above, defendants proffer evidence identifying reasons for not promoting Emanuel to sergeant in 2017 and 2018, the only years at issue in his case. *See infra*, Part I.B.1. These reasons were enough for 3 of his 7 evaluators to recommend not promoting him in 2017, citing neglect of duty and the making of purchases from a known dealer in stolen goods. Though Emanuel was recommended for promotion 5-0 in 2018, with 1 abstention, his reviewers noted disciplinary history and lack of education in their recommendations. *Id.* The Court finds these reasons for not promoting Emanuel to be sufficient to satisfy defendants' burden of production as to Emanuel. Therefore, the burden shifts back to plaintiff Emanuel to show that defendants' proffered reasons are pretextual.

**Plaintiff Kelly:** As reviewed above, defendants proffer evidence identifying non-discriminatory reasons for not promoting Kelly in 2017 and 2018, the only years at issue in his case. *See infra*, Part I.B.1. These include being only minimally qualified and having a history of being disciplined. *Id.* Further, one evaluator voted against promoting Kelly. The Court finds these reasons for not promoting Kelly to be sufficient to satisfy defendants' burden of production as to Kelly, and the burden shifts back to plaintiff Kelly to show that defendants' proffered reasons for not promoting Kelly are pretextual.

**Plaintiff Lentz:** As reviewed above, defendants proffer evidence identifying non-discriminatory reasons for not promoting Lentz in 2017 and 2018, the only years at issue in his case. *See infra*, Part I.B.1. These include insufficient experience and education. *Id.* However, these reasons did not dissuade evaluators from recommending Lentz for promotion 7-0 in 2017 and 5-0 in 2018, with 1 abstention. Without more, the Court cannot determine how Chief Scott chose not to promote Lentz in light of plaintiffs' evidence giving rise to a *prima facie* inference of discrimination. Without more, defendants have failed to meet their burden of production as to

Lentz, and the motion for summary judgment as to plaintiff Lentz is **DENIED**.

**Plaintiff McKelley:** As reviewed above, defendants proffer evidence identifying non-discriminatory reasons for not promoting McKelley in 2017 and 2018, the only years at issue in his case. *See infra*, Part I.B.1. In sum, these amount to being only minimally qualified. *Id.* Further, one evaluator voted against promoting McKelley in 2018. The Court finds these reasons for not promoting McKelley to be sufficient to satisfy defendants' burden of production as to McKelley, and the burden shifts back to plaintiff McKelley to show that defendants' proffered reasons for not promoting Kelly are pretextual.

**Plaintiff O'Keefe:** As reviewed above, defendants proffer evidence identifying non-discriminatory reasons for not promoting O'Keefe in 2017 and 2018, the only years at issue in his case. *See infra*, Part I.B.1. These include a lack of professional development and a history of being disciplined. *Id.* Further, two evaluators voted against promoting O'Keefe in 2017. The Court finds these reasons for not promoting O'Keefe to be sufficient to satisfy defendants' burden of production as to O'Keefe, and the burden shifts back to plaintiff O'Keefe to show that defendants' proffered reasons for not promoting O'Keefe are pretextual.

**Plaintiff Uang:** As reviewed above, defendants proffer evidence identifying non-discriminatory reasons for not promoting Uang in 2017, 2018, and 2019. *See infra*, Part I.B.1. These include repeated instances of neglect of duty, including a suspension for failing to take a report in a case involving the alleged battery of a child. *Id.* Further, a majority of evaluators never voted to promoted Uang in any year during the Relevant Period. The Court finds these reasons for not promoting Uang to be sufficient to satisfy defendants' burden of production as to Uang, and the burden shifts back to plaintiff Uang to show that defendants' proffered reasons for not promoting Uang are pretextual.

b. *Lieutenant Candidates*

**Plaintiff Greer:** As reviewed above, defendants proffer evidence identifying non-discriminatory reasons for not promoting Greer in 2017 and 2018, the only years at issue in his case. *See infra*, Part I.B.2. These include a lack of general readiness and a failure to follow instructions. *Id.* Further, three evaluators voted against promoting Greer in 2017, as did one

United States District Court
Northern District of California

evaluator in 2018. The Court finds these reasons sufficient to satisfy defendants' burden of production as to Greer, and the burden shifts back to plaintiff Greer to show that defendants' proffered reasons for not promoting Greer are pretextual.

**Plaintiff Harmston:** As reviewed above, defendants proffer evidence identifying non-discriminatory reasons for not promoting Harmston in 2017 and 2018, the only years at issue in his case. *See infra*, Part I.B.2. These include a lack of experience and professional development. *Id.* However, these reasons did not dissuade evaluators from recommending Harmston for promotion 7-0 in 2017 and 5-0 in 2018, with one abstention. Without more, the Court cannot determine how Chief Scott chose not to promote Harmston in light of plaintiffs' evidence giving rise to a *prima facie* inference of discrimination. Without more, defendants have failed to meet their burden of production as to Harmston, and the motion for summary judgment as to plaintiff Harmston is **DENIED**.

**Plaintiff Haskell:** As reviewed above, defendants proffer evidence identifying a non-discriminatory reason—lack of education—for not promoting Haskell in 2018 or 2019, the only years at issue in his case. *See infra*, Part I.B.2. However, these reasons did not dissuade evaluators from recommending Haskell for promotion 7-0 in 2017 and 5-0 in 2018, with one abstention. Without more, the Court cannot determine how Chief Scott chose not to promote Haskell in light of plaintiffs' evidence giving rise to a *prima facie* inference of discrimination. Without more, defendants have failed to meet their burden of production as to Haskell, and the motion for summary judgment as to plaintiff Haskell is **DENIED**.

**Plaintiff Newbeck:** As reviewed above, defendants proffer no evidence identifying non-discriminatory reasons for not promoting Newbeck in 2017, the only year at issue in his case. *See infra*, Part I.B.2. Additionally, his evaluators recommended him for promotion 7-0 in 2017. The Court cannot determine how Chief Scott chose not to promote Newbeck in light of plaintiffs' evidence giving rise to a *prima facie* inference of discrimination. Without more, defendants have failed to meet their burden of production as to Newbeck, and the motion for summary judgment as to plaintiff Newbeck is **DENIED**.

**Plaintiff Walsh:** As reviewed above, defendants proffer evidence identifying non-discriminatory reasons for not promoting Walsh in 2017 and 2018, the only years at issue in his case. *See infra*, Part I.B.2. These include significant disciplinary history, including, evidently, an issue vaguely identified as involving alcohol. *Id.* Further, three evaluators voted against promoting Walsh in 2017, as did one evaluator in 2018. The Court finds these reasons sufficient to satisfy defendants' burden of production as to Walsh, and the burden shifts back to plaintiff Walsh to show that defendants' proffered reasons for not promoting Walsh are pretextual.

c.      *Captain Candidate*

**Plaintiff Schiff:** As reviewed above, defendants proffer evidence identifying non-discriminatory reasons for not promoting Schiff in 2017 and 2018, the only years at issue in his case. *See infra*, Part I.B.3. These include disciplinary history, poor conduct, and insubordination. *Id.* Further, three evaluators voted against promoting Schiff in 2017, as did one in 2018, and that one evaluator abstained from voting in each of those years. The Court finds these reasons for not promoting Schiff to be sufficient to satisfy defendants' burden of production as to Schiff, and the burden shifts back to plaintiff Schiff to show that defendants' proffered reasons for not promoting Schiff are pretextual.

As defendants have met their burden as to plaintiffs Emanuel, Kelly, McKelley, O'Keefe, Uang, Greer, Walsh, and Schiff, the Court proceeds below with the third and last step of the *McDonnell Douglas* analysis.

3.      *Step 3: Plaintiffs' Evidence of Pretext*

None of the plaintiffs present any individualized evidence of pretext. Nor, as they admit, is their general quantitative analysis statistically rigorous. Instead, to show that the only reasonable explanation for Chief Scott's decisions was racial and gender animus, plaintiffs rely solely on anecdotal claims about similarly situated individuals with lower test scores who were promoted before plaintiffs. Such elementary arithmetic is not enough to show that defendants' non-discriminatory reasons for not promoting plaintiffs are mere pretext. Additionally, plaintiffs' data is ultimately self-defeating because, when further analyzed, the data shows that the individuals promoted from 2017 through 2019 were overwhelmingly white, overwhelmingly men,

United States District Court
Northern District of California

and also included many Asians.  *See supra*, Part I.C.  Moreover, plaintiffs conceded that test scores alone were not a basis for promotion.[16]  Thus, plaintiffs have failed to satisfy their burden under step three.

Accordingly, defendants' motion as to plaintiffs Emanuel, Kelly, McKelley, O'Keefe, Uang, Greer, Walsh, and Schiff is **GRANTED**.

### C.    Claims Against the City

Finally, the Court addresses plaintiffs' third (Title VII) and fourth (FEHA) causes of action against the City.

As referenced earlier, Title VII and FEHA make it unlawful for employers to discriminate on the basis of race or sex.  42 U.S.C. § 2000e; Cal. Gov't Code § 12940.  Under Title VII, public employers are vicariously liable for an employee's actions when the plaintiff is the victim of discrimination at the hands of a supervisor, and "an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim."  *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013).  Under FEHA, municipal employers are directly liable for invidious workplace discrimination at the hands of their employees.  *DeJung v. Superior Ct.*, 169 Cal. App. 4th 533, 542–548 (2008).

Here, the parties do not dispute that Chief Scott is an employee of the City or that he was and is empowered by the City to take tangible employment actions against plaintiffs by choosing not to promote them.  As Chief Scott is each plaintiff's supervisor, liability against the City under both Title VII and FEHA would exist to the extent a jury were to find that Chief Scott discriminated against any of the plaintiffs.  Thus, the success or failure of the City's motion on plaintiffs' Title VII and FEHA causes of action is governed by the same analysis as applies to

---

[16] Defendants' separate statement identified the following material fact as undisputed: "The review of secondary criteria when making law enforcement promotion decisions is justified." (Am. Separate Statement of Undisputed Material Facts In Supp. of Defs.' Mot. for Sum. J. or, In the Alternative, Partial Sum. J./Sum. Adjudication, Dkt. No. 88 at 9.)  Plaintiffs' separate statement, filed on behalf of all plaintiffs, affirmed that they do not dispute this fact, which necessarily implies that factors other than test scores are appropriately considered in the promotions process. (Pls.' Statement of Undisputed Material Facts In Supp. of Pls.' Opp'n to Defs.' Mot. for Sum. J. or, In the Alternative, Partial Sum. J., Dkt. No. 90-1 at 11.)

United States District Court
Northern District of California

defendant Scott's motion on plaintiffs' Section 1981 and Section 1983 causes of action.

Accordingly, the motion is **GRANTED** and **DENIED** as to the City on the same grounds as set forth above with respect to each plaintiff.

## IV.   CONCLUSION

For the reasons stated above:

As to the First Cause of Action under Section 1981 and the Second Cause of Action under Section 1983 with respect to defendant Scott, the motion is **DENIED** as to plaintiffs Brakel, Lentz, Harmston, Haskell, and Newbeck and **GRANTED** as to plaintiffs Emanuel, Kelly, McKelley, O'Keefe, Uang, Greer, Walsh, and Schiff.  However, the motion with respect to the City on these two causes of action is **GRANTED** as to all plaintiffs as they concede it should be.

As to the Third Cause of Action under Title VII and the Fourth Cause of Action under FEHA, the claims parallel the analysis with respect to defendant Scott.  Thus, the motion with respect to both defendants is **DENIED** as to plaintiffs Brakel, Lentz, Harmston, Haskell, and Newbeck and **GRANTED** as to plaintiffs Emanuel, Kelly, McKelley, O'Keefe, Uang, Greer, Walsh, and Schiff.

The Court hereby sets a trial setting conference for November 7, 2022 at 2:00 p.m.  Parties shall file a joint conference statement identifying the date by which they will be ready for trial and any trial conflicts (with case names and numbers) through the end of the summer of 2023.

This order terminates Docket Number 78.

**IT IS SO ORDERED.**

Dated: October 25, 2022

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**